THOMAS, J., for the Court:
¶ 1. James Lashley appeals his conviction of manslaughter, raising the following issue as error:
I. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT LASHLEY’S MOTION FOR A NEW TRIAL IN THAT THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE PRESENTED.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. In the early morning hours of January 1,1994, Lavern Collins was fatally shot in the parking lot of Club Unique located in Clay County, Mississippi. On April 8, 1994, James Lashley was indicted by a Clay County Grand Jury for Collins’s murder. Trial of this matter was commenced on October 12,1994. The circumstances of how this shooting took place varied consid *1176 erably among the witnesses presented at trial.
¶ 4. The State’s first witness was Michael Rice. Rice testified that he, Alfonzo Garth, Stanley Isaacs, and Chris Keys had all gone to Club Unique to celebrate the coming of the New Year. At some point Rice met up with Collins and Robert Harris, acquaintances of his. Rice testified that Lashley and another man, Eric Moore, were looking at them like they wanted to “start something.” Rice testified that he, Collins, and Harris followed Lashley and Moore to their car. Rice stated that at this point no words had passed between his group and Lashley and Moore. He further testified that no one from his group had a gun. Rice specifically testified that Collins was unarmed. Rice testified that as his group walked toward Lashley and Moore that Lashley pulled a gun and fired twice, hitting Harris. Rice stated that Lashley then handed the gun to Moore who then fired multiple times. Rice only saw one gun.
¶ 5. Garth testified that he, Rice, Isaacs, and Keys drove out to Club Unique. Garth testified that when they decided to leave that he, Rice, Isaacs, and Keys returned to their car but before they left Garth sent Rice back to the club to get Collins’s sister. On his way back to the club, Rice walked over to where Collins and Harris were talking with Lashley,and Moore. At that point, Garth and Isaacs got out of their car and started to walk over to them when the shooting started. Garth testified that Lashley fired first but that both Lashley and Moore had a gun, and that both were firing at Harris and Collins. Garth did not know whose bullets hit whom, but that Harris fell first. Garth testified that neither he nor his friends had a gun.
¶ 6. Isaacs testified that he, Rice, Garth, and Keys drove out to Club Unique. Isaacs testified that he went back to the car when he saw “some guys arguing.” He stated that he started to walk over to where the argument was taking place when the shooting started. He stated that both Lashley and Moore were shooting and aiming at Collins and Harris. Isaacs stated he did not have a gun nor did his friends.
¶ 7. Charity Vasser testified that she was at Club Unique with her friend Ra-shonda Smith. Vasser testified that as she was leaving she heard three shots fired and saw Collins falling. She testified that Collins was holding a gun in his hands. She further testified that she saw Lashley with a gun but did not actually see the shooting.
¶ 8. Harris testified that he was at the Club Unique with Collins and another individual named Greg Dunlap. He testified that he was leaving the club with Harris and Dunlap when the shooting started. Harris stated that he had not provoked Lashley and did not know anyone who had provoked Lashley. Harris also testified that he did not have a gun nor did Collins or Dunlap. He testified that he was shot by Lashley, but he did not know who shot Collins.
¶ 9. Jerry Pee and Jeff Williams, police officers of West Point, testified that they were leaving the police station when Lash-ley entered to turn himself in and hand over his gun, a .380 automatic pistol. Williams testified that he held the gun until he turned it over to Ray Moore, a criminal investigator for the Clay County Sheriffs Department.
¶ 10. Moore testified that as part of his investigation he recovered several items at the scene of Club Unique. Moore recovered eight spent .380 cartridge cases, a fired .380 round, a spent .25 cartridge case, and one live .25 cartridge case. Moore also testified that he recovered a projectile from the door of the car Lashley was driving on the night in question. However, its caliber was never identified.
¶ 11. Dr. Steven Haynes testified that he performed an autopsy on Collins. He described two gunshot wounds to Collins, one lethal and one non-lethal. The non-lethal *1177 gunshot wound was described by Haynes as to the top part of Collins’s left shoulder. Haynes testified that the lethal gunshot wound was to the mid part of Collins’s chest. Haynes testified that only one bullet was recovered, and that bullet came from the non-lethal wound.
¶ 12. Steve Byrd, a forensic scientist, testified that the bullet recovered from Collins’s body came from Lashley’s gun. Byrd further testified that the fired projectile found at the scene came from Lash-ley’s gun. Byrd also stated that the eight .380 cartridge cases recovered showed characteristics as having come from Lash-ley’s gun, but Byrd could not say to the exclusion of all other firearms that the cases could only have been fired from Lashley’s gun.
¶ 13. After the State rested, the defense called Regina Townsend, Lashley’s sister, to the stand. Townsend testified that she, Shamika Martin, Beatrice Thomas, Chris Banks, Moore, Tavaras Clark, and Lashley rode out to Club Unique on the night in question. Townsend testified that they had decided to leave and were already in the car when Harris, Rice, and Collins came over and told Moore to get out of the car. When Moore refused, Townsend stated that Collins opened the door and went in after Moore, who attempted to exit on the other side. At that point, Townsend stated that Rice went over to the other side and pushed the door on Moore as he attempted to exit. Townsend stated that Collins, Harris, and Rice were standing by the door in front of Lashley, Moore, and Clark when the shooting started. Townsend stated she did not see who was doing the shooting as she ran for her safety.
¶ 14. Martin’s testimony was almost identical to that of Townsend’s testimony. In addition, Martin testified that she knew Collins, Rice, Harris, Garth, and Dunlap. Martin testified that Rice had said that he was going to kill Moore at twelve o’clock. Martin testified that when she and her group decided to leave that Collins and Rice came up to the car. Martin testified that Rice told Collins that Moore “tried to jump on me at his party,” and Collins responded by saying “well we going to get him.” Martin stated that Collins went in the car after Moore who exited on the driver’s side. Martin testified that Rice was on the driver’s side and pushed the door on Moore. Martin further testified that Collins then came up behind Moore and pulled a gun. Martin testified that Moore took off running, and that Collins shot twice, hitting the car and Banks on the arm. Martin testified that Lashley did not pull his gun until Collins fired the second shot. At that point, Martin testified that Lashley returned fire. Martin also testified that at the time other shots were being fired there at Club Unique.
¶ 15. Banks testimony was almost identical to Townsend and Martin’s testimony. Banks testified that Collins tried to get Moore out of the car and when Moore finally exited on the driver’s side that Collins came around to that side and pulled a gun, firing twice. He stated that Collins’s first bullet hit the car, and the second grazed his arm. Banks testified that Moore took off running when the shooting started. Banks testified that Lashley did not pull his gun until the second shot. Banks also testified that other shots were fired there at the club at the same time.
¶ 16. Clark testified that Rice told Moore he was going to kill him at twelve o’clock. Clark testified that this statement was the reason his group decided to leave. As testified by other defense witnesses, Clark stated that Collins and Rice came out to the car, and Collins attempted to get Moore out of the car. Clark stated that he was standing by the driver’s side at the back door when Collins came up and pulled a gun on him. Clark stated that Collins began firing, hitting the car and Banks. Clark also testified that Collins was shooting at Lashley, who pulled his gun and shot Collins. Clark also testified that other shots were being fired at the club.
*1178 ¶ 17. Moore testified that Rice and another man named Stanley Harris crashed a party he was having at his parents’ house about a month before the incident in question. Moore testified that while he was in Club Unique on the night in question Rice came up to him and threatened to kill him at twelve o’clock. Moore testified that he told Lashley, and the decision was made to leave. Upon reaching the car, Moore stated that Collins and Rice showed up, and Collins attempted to get Moore out of the vehicle. Moore testified that Rice pushed the car door on him so he pushed it back on Rice. When he exited the car, Moore stated he saw Collins pull a gun and fire twice, hitting the car. Moore stated he ran off and hid in some bushes. Moore stated that when he looked up from the bushes he saw both Collins and Lash-ley with a gun and that the both just started shooting. Moore testified that there were also other shots being fired at Club Unique.
¶ 18. Ella Fay Townsend Lashley Bell, Lashley’s mother, testified that she lent Lashley her car on the night in question. Bell testified that when it was returned on January 1, 1994, there was a bullet hole in the driver’s door. Photographs showing the bullet hole were verified by Bell and introduced as evidence.
¶ 19. Taking the stand in his own defense, Lashley testified that as he and his friends were leaving Club Unique that Collins, Rice, Harris, and Dunlap walked up to the car. Lashley testified that Collins got in the car in an attempt to get Moore, but that Moore exited on the driver’s side. Lashley testified that he was pulled from the car, and that Collins and the others were saying they were going to get Moore for what happened at Moore’s party. Lashley stated that when Moore got out of the car he shouted “he got a gun” and took off running. Lashley stated that Collins pulled a gun and fired at him. Lashley testified that the first bullet passed through his pants and into the car. Lash-ley testified that a second bullet also hit his pants. The pants worn by Lashley that night were offered into evidence. Lashley testified that Collins, Harris, Dunlap, and Garth all had guns and that Collins, Dunlap, and Garth were firing at him.
¶ 20. Having heard all of the evidence, the jury retired for deliberations. After deliberations, the jury returned a verdict of guilty of manslaughter. Aggrieved, Lashley appealed.
ANALYSIS
I.
THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT LASHLEY’S MOTION FOR A NEW TRIAL IN THAT THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE PRESENTED.
¶ 21. Lashley argues that the State’s case is predicated upon the credibility of four witnesses, namely Rice, Harris, Garth, and Isaacs. Lashley argues that these witnesses were all involved in the fight at the club on the night of the shooting, and therefore, their credibility is extremely questionable. Lashley maintains that the State’s key witnesses all testified that Collins had no gun, while the only disinterested witness called by the State, Vasser, contradicted their claims. Lashley argues that we should step in and order a new trial as the evidence adduced at trial will not support the high standard of proof beyond a reasonable doubt.
¶ 22. A motion for a new trial tests the weight of the evidence rather than its sufficiency. Butler v. State, 544 So.2d 816, 819 (Miss.1989). The Mississippi Supreme Court has stated:
As to a motion for a new trial, the trial judge should set aside the jury’s verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence; this Court will not reverse unless convinced the verdict is *1179 against the substantial weight of the evidence.
Id. (quoting Russell v. State, 506 So.2d 974, 977 (Miss.1987)).
¶ 23. The lower court has the discretionary authority to set aside the jury’s verdict and order a new trial only where the court is “convinced that the verdict is so contrary to the weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.” Roberts v. State, 582 So.2d 423, 424 (Miss.1991) (citations omitted). Based on the record before us, the evidence was sufficient to allow the case to go to the jury, and the jury’s verdict was not against the overwhelming weight of the evidence.
¶24. Lashley bases his argument on the credibility of the witnesses. However, that is the very job of the jury. To weigh the evidence, to determine who is telling the truth and who is lying, and to ascertain who may or may not be biased are all within the province of the jury. Although the evidence was conflicting, the jury was properly allowed to perform its function and resolve the conflicts. This assignment of error is without merit.
¶ 25. THE JUDGMENT OF THE CLAY COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAY COUNTY.
McMILLIN, C. J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.